# JOHN G. BERG v. UNION STATE BANK.[1]

## No. 27,452.

### January 17, 1930.

[1]Reported in 229 N. W. 102.

*Paul J. Marwin,* for appellant.
*John Lind,* for respondent.

OLSEN, C.

Action to recover the proceeds of four county warrants owned by plaintiff and collected by defendant. A verdict was directed by the court in favor of plaintiff, and defendant appeals from the judgment entered thereon.

Plaintiff purchased the warrants from or through Stevens & Company, a bond and brokerage house in Minneapolis, in July, 1921. For brevity Stevens & Company will hereafter be referred to as the company. On February 9, 1922, the company notified plaintiff that the county auditor of Richland county, Montana, the county issuing the warrants, was ready to pay them, requested plaintiff to bring them to the company's office in Minneapolis, agreed to forward them to Montana for collection, and as soon as payment was received to then pay over the proceeds to plaintiff. Pursuant to this agreement plaintiff then delivered the warrants to the company for collection. The company was a customer of and had a checking account in the defendant bank. On February 23, 1922, it attached to the warrants a draft on a local Montana bank, in its own favor, for the amount thereof, took the warrants and draft to the defendant, made out a deposit slip in its own name, delivered the warrants and draft to the bank, and received credit in its checking account for the amount. The deposit credit was given by the bank on the usual condition that if the warrants and draft were not paid the amount credited would be charged back to the company. The bank then forwarded the warrants and draft for collection to the Montana bank. They were paid and the proceeds, $3,772.72, were received by defendant on March 8, 1922. The company failed to pay any part of these proceeds to plaintiff. Demand was thereafter made by him upon the defendant for the warrants or proceeds thereof and refused.

The defense interposed is that the defendant bank received the warrants and draft from the company and credited it with the proceeds thereof in good faith and without notice or knowledge of plaintiff's ownership of or interest in the warrants or proceeds, and that before it received any such notice or information it had paid over to the company, or paid out on checks of the company, the proceeds of the warrants in the regular course of its banking business.

■ The question of the liability of a bank to the true owner for funds deposited therein in his individual name by a trustee or agent of the owner has been considered in numerous cases in many jurisdictions. The notes to the cases of Arnold v. San Ramon Valley Bank, 13 A. L. R. 320; Cable v. Iowa State Sav. Bank, 31 A. L. R. 748; and Agard v. Peoples Nat. Bank, 50 A. L. R. 629, give a comprehensive view of the holdings of the different courts.

It is uniformly held that if the bank has notice or knowledge of the true ownership of the fund, or if it has knowledge of facts and circumstances sufficient to require inquiry on its part, which inquiry if made would have disclosed the true ownership, it cannot apply the fund to an individual indebtedness owing to it by the agent or trustee depositing the same. Rodgers v. Bankers Nat. Bank, 179 Minn. 197, 229 N. W. 90.

■ When it comes to the question of whether the bank, where it has no notice or knowledge of the true ownership of the fund and no notice of circumstances calling for inquiry, can apply the fund to an indebtedness owing to it by the trustee or agent individually and thereby escape liability to the true owner, there is a sharp division in the authorities. The more numerous decisions and weight of authority appear to be that in such case the bank may apply the fund or deposit in payment of a debt owing to it by the trustee or agent individually without thereby becoming liable to the true owner.

A substantial number of the courts however have adopted and follow a modification of this rule, referred to as the equitable rule. That rule is that a bank, even though it has no express or implied knowledge of the true ownership of the fund deposited in his own

name by the trustee or agent, cannot apply such fund to the individual debt of such trustee or agent where the lack of knowledge has not resulted in any detrimental change in the bank's position and no superior equities have arisen in its favor. Bank of Metropolis v. New England Bank, 1 How. 234, 11 L. ed. 115; Id. 6 How. 212, 12 L. ed. 409; Thomas Wilson & Co. v. Smith, 3 How. 763, 11 L. ed. 820; Beaver Boards Cos. v. Imbrie & Co. (D. C.) 287 F. 158; Fulton Nat. Bank v. Hosier (C. C. A.) 295 F. 611; Commercial C. Co. v. Continental T. Co. (C. C. A.) 295 F. 615; In re Steele-Smith D. G. Co. (D. C.) 298 F. 812; Porter v. Roseman, 165 Ind. 255, 74 N. E. 1105, 112 A. S. R. 222, 6 Ann. Cas. 718; Burtnett v. First Nat. Bank, 38 Mich. 630; Cady v. South Omaha Nat. Bank, 46 Neb. 756, 65 N. W. 906; Id. 49 Neb. 125, 68 N. W. 358; Union Stockyards Nat. Bank v. Campbell, 2 Neb. (Unof.) 96 N. W. 608; Brady v. American Nat. Bank, 120 Okl. 159, 250 P. 1006; Shotwell v. Sioux Falls Sav. Bank, 34 S. D. 109, 147 N. W. 288, L. R. A. 1915A, 715; Gibbs v. Commercial & Sav. Bank, 50 S. D. 134, 208 N. W. 779; Thompson v. Commercial & Sav. Bank, 50 S. D. 154, 208 N. W. 780; Davis v. Panhandle Nat. Bank (Tex. Civ. App.) 29 S. W. 926; First Nat. Bank v. First State Bank (Tex. Civ. App.) 252 S. W. 1089. The cases in this state most closely in point are Platts v. Metropolitan Nat. Bank, 130 Minn. 219, 153 N. W. 514, and Agard v. Peoples Nat. Bank, 169 Minn. 438, 211 N. W. 825, 50 A. L. R. 629. The Agard case places this state fairly in line with the courts applying the equitable rule. It is in harmony with our decisions as to the tracing and recovery of trust funds. Stein v. Kemp, 132 Minn. 44, 155 N. W. 1052; Stabbert v. Manahan, 163 Minn. 214, 203 N. W. 611; Blummer v. Scandinavian Am. State Bank, 169 Minn. 89, 210 N. W. 865; Milne v. Capital T. & S. Bank, 170 Minn. 66, 211 N. W. 954; Adams v. Farmers State Bank, 176 Minn. 108, 222 N. W. 576.

Under the first rule stated the bank is liable to the true owner if, with express or implied notice of his ownership, it applies the fund to the individual debt of the agent or trustee. Under the equity rule the bank is also liable to the true owner, whether or not it had express or implied notice of his ownership, if without changing its

position so as to acquire equal or superior equities as against the owner it seeks to offset the individual debt of the agent or trustee against the fund. Whether the indebtedness to which the fund is sought to be applied is an overdraft, account, or promissory note is not important. The test is whether the bank has so changed its position that it has acquired equal or superior equities. It may be noted that in six of the cases from other jurisdictions, cited as following the equity rule, the debt to which the fund was sought to be applied consisted in whole or in part of an overdraft. In none of these cases, so far as appears, is any distinction made between an overdraft and a debt on account or on a promissory note. In the case of Shotwell v. Sioux Falls Sav. Bank, 34 S. D. 109, 147 N. W. 288, L. R. A. 1915A, 715, cited and approved in Agard v. Peoples Nat. Bank, 169 Minn. 438, 211 N. W. 825, 50 A. L. R. 629, the debt in question was an overdraft. The case of Kimmel v. Bean, 68 Kan. 598, 75 P. 1118, 64 L. R. A. 785, 104 A. S. R. 415, goes no further than to apply the majority rule, as distinguished from the equity rule, to an indebtedness on an overdraft, in a state not following the equity rule.

■ The holdings are uniform that trust funds do not lose their character by being deposited in a bank in his own name by a trustee or agent.

■ In the present case the plaintiff was entitled to recover if the fund was merely applied to an overdraft of the agent and the bank did not otherwise change its position so as to acquire equities sufficient to prevent recovery by plaintiff.

The company here did not in the first instance deposit any money in the bank. It deposited these non-negotiable warrants, accompanied by a draft in its own name, for collection of the warrants, and received only conditional credit. The company was engaged in the bond and security brokerage business. That its business was an agency business for others was reasonably apparent. It had been a customer of defendant for a long time. It was doing a large banking business, depositing large credit items and checking out large items continuously. The character of these items is not shown.

�as

The evidence was not such as to present only a question of law on the issue of implied notice at least. Union Stock Yards Nat. Bank v. Gillespie, 137 U. S. 411, 11 S. Ct. 118, 34 L. ed. 724; Union Stock Yards Nat. Bank v. Moore (C. C. A.) 79 F. 705; Steere v. Stockyards Nat. Bank, 113 Tex. 387, 256 S. W. 586, 258 S. W. 1042; Cable v. Iowa State Sav. Bank, 197 Iowa, 393, 194 N. W. 957, 197 N. W. 434, 31 A. L. R. 748; Southwest Nat. Bank v. Evans, 94 Okl. 185, 221 P. 53.

At the time the defendant bank collected and received the fund in question the bank account of the company was overdrawn in an amount exceeding the fund so received. The account continued to be overdrawn. After the bank received the fund the company made other large deposits and checked out large sums, but remained overdrawn as stated. The cashier of the bank testified that he believed the bank would have paid the company's checks in the same amount if this fund had not been received; that the company was permitted to overdraw. It was not claimed that the company or anyone else had checked against or drawn out the specific fund in question. Whether the bank had paid to the company or paid out for it this particular fund, or changed its position in reference thereto so that it had acquired equities such as would prevent plaintiff from recovering, were questions of fact for the jury. The evidence was not so conclusive either way as to make it a question of law. The record does not show on what ground the verdict was directed, and in the event of a new trial the evidence may be different.

We conclude that the court erred in directing a verdict.

Judgment reversed. Case remanded for a new trial.

UPON APPLICATION FOR REARGUMENT.

On February 28, 1930, the following opinion was filed:

PER CURIAM.

A motion for reargument by each party is denied.

The case of Neilson v. Union State Bank, 165 Minn. 25, 205 N. W. 453, was not cited in the opinion. In that case, under a similar

state of facts, an order for judgment for defendant was sustained. In the present case a judgment entered upon a directed verdict for plaintiff is reversed and a new trial granted. In the Neilson case it was held that the evidence established that, before the bank had any knowledge that plaintiff was interested in the warrants, the money received in redemption of the same had all been turned over and accounted for to its customer, Stevens & Company. In the present case we say:

"Whether the bank had paid to the company or paid out for it this particular fund, or changed its position in reference thereto so that it had acquired equities such as would prevent plaintiff from recovering, were questions of fact for the jury."

There being no verdict of the jury or findings of fact upon the question, a new trial is properly granted.

